UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA,

                        15-CR-499 (SJ)

**ORDER ADOPTING REPORT AND RECOMMENDATION**

        -against-


ANDY WILLIAMS

        Defendant.
-------------------------------------------------X

JOHNSON, Senior District Judge:

      Andy Williams ("Defendant" or "Williams") has pled not guilty to a single-count indictment, charging him with being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). Defendant moves to suppress the firearm and other items seized by police officers following a stop and search of his vehicle on August 27, 2015. Presently before the Court are transcripts from the suppression hearings held on June 7, 2016 and June 27, 2016; the parties' memoranda; a Report and Recommendation ("Report") by Magistrate Judge Cheryl L. Pollak denying Defendant's motion to suppress; and Defendant's objections ("Objections"). Familiarity therewith is assumed. (See Docket numbers ("Dkt. Nos.") 22-27.)

1

Within 14 days of service of the recommendation, any party may file written objections to the magistrate's Report. See 28 U.S.C. § 636(b)(1). Upon de novo review of those portions of the record to which objections were made, the district court judge may affirm or reject the recommendations. Id. The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

1. Background

Defendant makes three arguments in support of his motion to dismiss: (1) the NYPD's initial stop and detention of defendant's car was unlawful because the officers had no reasonable suspicion to believe that a crime or traffic violation had been committed; (2) even if the initial stop was valid, his arrest for unauthorized use of a vehicle and reckless driving was without basis because he was, in fact, authorized by Hertz to drive the car; and (3) the second, warrantless search of the car was unlawful and the gun and his post-arrest statements should be suppressed. (See Letter Brief in Support of Motion to Suppress ("Def. Ltr."), Dkt. No. 24.)[1] Defendant also asserts blanket objections to Judge Pollak's Report and makes two

---

[1] The Parties initially disputed Defendant's standing to challenge the vehicle search. However, the issue is now moot as the evidence produced at the hearing shows that Defendant had standing to challenge the search and the Government has accordingly withdrawn its objection. (See Def. Ltr. p. 2 and Government's June 7, 2016 post-hearing submission at 9.)

additional, brief points: first, that the Court erred in determining the second search was conducted pursuant to standardized NYPD procedure; and second, that the search was investigatory and not valid under the Fourth Amendment. (See Objections pp. 1-2.)

2. Discussion

As an initial matter, only two witnesses, Detective Dominick Latorre ("Latorre") and Detective Ashley Breton ("Breton"), testified at the suppression hearing. Judge Pollak, who observed the detectives, credited their testimony in its entirety. (See Report, p. 1.) Defendant does not attempt to show that the detectives were unreliable witnesses. Therefore, this Court also credits their testimony.

A. The NYPD's arrest of Defendant was lawful.

The Fourth Amendment right to be secure against unreasonable searches and seizures extends to vehicle stops. U.S. Const. amend. IV; Whren v. United States, 517 U.S. 806, 809–10, (1996). "[T]he Fourth Amendment requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." United States v. Wilson, 699 F.3d 235, 242 (2d Cir. 2012) (quoting United States v. Harrison, 606 F.3d 42, 45 (2d Cir.2010)). The question is whether the arresting officer "had probable cause to

believe that a traffic violation occurred or was occurring in the officer's presence..." United States v. Scopo, 19 F.3d 777, 784 (2d Cir. 1994).

The New York State Vehicle and Traffic Laws ("N.Y. V.T.L.") §§ 1212 and 1180 prohibit speeding and unreasonable interference "with the free and proper use of the public highway, or unreasonably endanger[ing] users of the public highway." Under New York Penal Law ("N.Y.P.L."), a traffic infraction, such as the aforementioned, is an offense for which NYPD officers are authorized to make a custodial arrest. See N.Y. C.P.L. § 140.10(1) ("[A] police officer may arrest a person for . . . [a]ny offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence."); N.Y.P.L. § 10.00(1) ("'offense' means conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law, local law or ordinance of a political subdivision of this state, or by any order, rule or regulation of any governmental instrumentality authorized by law to adopt the same."); N.Y. V.T.L. § 155 ("For purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense.").

Latorre testified that he observed Defendant driving at a high rate of speed and weaving in and out of traffic without signaling. (June 7, 2016 Transcript ("Tr.") p. 12.) Lattore could tell Defendant was speeding based on the other vehicles on the road and because Latorre had to "speed up past the speed limit in order to stay in place with [Defendant's] vehicle." (Id.) After pulling the vehicle over, Latorre asked

to see Defendant's license and registration. (Tr. 13-14.) Defendant explained the car was a Hertz rental car and he showed Latorre the rental agreement. (Tr. 14.) The rental agreement did not bear Defendant's name, and Latorre arrested Defendant for reckless driving and the unauthorized use of a rental vehicle. (Tr. 14-16.) Defendant was transported to the 63rd Precinct along with the rental car. (Tr. 16.)

There is no question that Latorre had "probable cause to believe that a traffic violation was occurring in the officer's presence." See Scopo, 19 F.3d at 784. Latorre observed Defendant weaving in and out of traffic, without signaling, at a high rate of speed. (Tr. 12.) These actions violated New York State traffic laws, for which Defendant could be arrested. See N.Y. V.T.L. §§ 1212 and 1180; N.Y. C.P.L. § 140.10(1). Although evidence at the hearing demonstrated that Defendant was, in fact, an authorized driver of the vehicle, the issue is whether Latorre knew that information when he pulled over Defendant. Without documentation showing that Defendant was an authorized driver, Latorre also had probable cause to arrest him for unauthorized use of a vehicle. See N.Y.P.L. 165.05 ("Unauthorized use of a vehicle in the third degree is a class A misdemeanor."); Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006); Bernard v. United States, 25 F.3d 98, 102-03 (2d Cir. 1994) ("[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information."). In any event, Defendant's speeding and reckless driving were alone sufficient to establish probable cause for Defendant's arrest.

B. <u>The second search of the car was lawful.</u>

At the precinct, Lattore was taken inside for processing, while the car was parked outside for an inventory search. (Tr. 16, 17, 47, 48.) According to the New York Police Department Patrol Guide ("Patrol Guide"), the purpose of an inventory search is to: "protect property, ensure against unwarranted claims of theft, and protect uniformed members of the service and others against dangerous instrumentalities." Officers are required to search the interior of the vehicle thoroughly. (Patrol Guide, p.1) Force may be used only if it can be done with minimal damage, unless: officers reasonably suspect that the item contains weapons, explosives, hazardous materials or contraband; the items are in plain view; or the contents can be inferred from the outward appearance of the container. (<u>Id</u>.) Officers conducting the inventory search uncovered a black mask, gloves and duct tape "in plain view." (Tr. 18, 19, 49.)

While Latorre was in the process of fingerprinting Defendant, Defendant asked to make a phone call. (Tr. 18, 19, 45, 49.) Latorre was standing "two to three feet" away from Defendant and overheard Defendant tell someone on the phone that they "need to come get this car right now, they're looking to tow it. You need to come get his car up out of here." (Tr. 19, 50.) Defendant appeared nervous and was speaking quickly. (<u>Id</u>.) Latorre believed that Defendant was concerned about the car remaining in police custody and thought he may have missed "something of value" during the initial search. (Tr. 19, 54.)

Latorre returned to the vehicle and asked Breton, who was walking into the precinct, to assist with the search. (Tr. 19, 20.) The detectives searching the car informed Breton that they had just arrested someone and were performing an inventory search of the vehicle. (Tr. 65.) Breton has experience with inventory searches and normally searches for "hidden compartments." (Tr. 65-66.) Breton began searching the vehicle, and within "one to two minutes," uncovered a gun hidden behind a plastic panel on the side of the front console. (Tr. 20-21, 66, 70.) The panel snapped off with Breton's fingertips, did not require tools and "not much force" to remove. (Tr. 66, 68, 70; Government's Exhibit ("GX") 4.) Breton alerted the other detectives and photographed the compartment and the gun. (Tr. 70-71, 80; GX 4.) Defendant was then charged and arraigned on the firearm charge as well as the vehicle violations. (Tr. 30-31.)

It is well settled law that "when law enforcement officials take a vehicle into custody, they may search the vehicle and make an inventory of its contents without need for a search warrant and without regard to whether there is probable cause to suspect that the vehicle contains contraband or evidence of criminal conduct." United States v. Lopez, 547 F.3d 364, 369 (2d Cir. 2008). An inventory search is lawful if it is conducted "in good faith pursuant to 'standardized criteria … or established routine.'" United States v. Thompson, 29 F.3d 62, 65 (2d Cir. 1994) (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)). Even if officers expect to find evidence of a crime,

an inventory search is permissible provided that it follows standard procedure. See Lopez, 547 F.3d at 370-372.

Here, Latorre returned to the car because he believed he missed something of value, including contraband or other items that could have been vouchered for safekeeping. (Tr. 19, 54, 55.) This comports with the N.Y.P.D. Patrol Guide, which requires a "thorough" search of the vehicle, and its stated purpose: "to protect property, ensure against unwarranted claims of theft, and protect uniformed members of the service and others against dangerous instrumentalities." (Patrol Guide, p. 1.) That Latorre testified that he might find contraband in addition to other items does not indicate bad faith or rise to the level of an investigation. See United States v. Arango-Correa, 851 F.2d 54, 59 (2d Cir. 1988); Lopez, 547 F.3d at 370-372. Moreover, when Breton joined the search of the vehicle, he was informed the officers were conducting an inventory search and he proceeded to search the vehicle in that manner. (Tr. 65.) In Breton's experience, an inventory search consists of looking "for hidden compartments" and he had observed items hidden behind panels like the one at issue here "more than once." (Tr. 65.)

Defendant points to no evidence that restricts an inventory search to a single moment in time. He likewise fails to show that the officers' motives or actions were beyond the scope of an inventory search, or that anything more than minimal force was used to open the panel. Judge Pollak found the officers' testimony credible and upon review of the evidence, this Court has no reason to disturb that finding.

3. <u>Conclusion</u>

The Court has considered Defendant's remaining claims and finds them to be without merit. Upon de novo review of the recommendations, this Court adopts and affirms Magistrate Judge Pollak's Report in its entirety.


SO ORDERED.


Dated: August 31, 2016  _____/S/_____
      Brooklyn, NY              Sterling Johnson, Jr., U.S.D.J.